**FILED**
**Jul 17, 2025**
**08:17 AM(CT)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT NASHVILLE

| | | |
|---|---|---|
| Sabrina Rooks, | ) | Docket No. 2024-60-5751 |
| Employee, | ) | |
| v. | ) | |
| Amazon.com, | ) | State File No. 38259-2024 |
| Employer, | ) | |
| And | ) | |
| American Zurich Insurance Company, | ) | Judge Kenneth M. Switzer |
| Carrier. | ) | |

## EXPEDITED HEARING ORDER

The Court held an expedited hearing on July 9, 2025, originally scheduled to consider two issues: Sabrina Rooks's entitlement to medical care based on a direct referral and temporary partial disability benefits.

At the opening of the hearing, Amazon announced that an appointment was set with Dr. Christopher Jones on July 16. Ms. Rooks's authorized physician directly referred her to Dr. Jones on July 3, 2024. Considering this delay, the Court refers Amazon to the Compliance Program for consideration of a penalty. The Court additionally finds that Amazon unreasonably failed to provide treatment.

As to temporary partial benefits, Ms. Rooks argued Amazon created the conditions that caused her to violate a workplace rule: no sleeping on the job. Ms. Rooks admitted she fell asleep at work several times. The Court finds that Amazon proved Ms. Rooks violated a valid workplace rule and holds she is unlikely to prevail at a hearing on the merits on entitlement to these benefits.

### Claim History

Ms. Rooks broke her right foot in a non-work-related accident in April 2024. Dr. Jones treated her injury, prescribing hydrocodone and a knee scooter for mobility. Ms. Rooks did not offer his treatment records into evidence.

1

Amazon returned Ms. Rooks to work under the restriction. On May 29, 2024, she injured her right foot, ankle, and knee when her scooter became entangled in debris on the warehouse floor. Amazon accepted the claim, although the dispute certification notice lists compensability as an issue.

Over the next few weeks, Ms. Rooks saw authorized physician Dr. Frank Thomas several times. Amazon forms show that Dr. Thomas checked a box stating that the injury related to work and placed her on light-duty on July 3 and four other times. Ms. Rooks said that both before and after the work injury, Amazon accommodated her restrictions by offering her work "typing on the computer."

She testified to many difficulties with the work accommodations before and after the work injury. Before, a human resources worker "harassed" her about working with an open-toe boot. Ms. Rooks also needed to walk a lengthy distance using crutches or the scooter to get ice for her knee. Later, the onsite clinic stopped giving her ice altogether.

For approximately a month after the work injury, Ms. Rooks was "decoded," meaning her log-in credentials did not work. She was unable to find anyone in IT or human resources who could assist her with getting into the system. Her supervisor was frequently unavailable as well. As a result, she had no work to do. She and others at the "accommodation table" often looked at their phones or socialized to pass the time. Ms. Rooks put in 10.5-hour shifts, working from 6:30 p.m. to 5:00 a.m., Sunday through Wednesday. Additionally, medication she took for her injury made her sleepy.

Ms. Rooks candidly admitted that she fell asleep at work as many as six times between June and August 22, 2024, when Amazon terminated her. She also agreed that before the termination, Amazon warned her she could be fired for sleeping on the job. Ms. Rooks has not worked since the termination.

Amazon confirmed two of the sleeping incidents by offering, without objection, "Supportive Feedback Documents" showing that on July 23 and August 12 Ms. Rooks was found sleeping in violation of a workplace policy. The forms state that she acknowledged them, which Ms. Rooks disputed. One of the forms is dated September 5, 2024—two weeks after her termination.

Amazon also offered a records-review report from Dr. Jeffrey Hazlewood finding that Ms. Rooks's condition is not more than 50% related to the May 29 work incident.

As for the appointment with Dr. Jones, the Court previously ordered that Amazon must honor the referral before scheduling an employer's examination. The Appeals Board affirmed this order on May 20, 2025. On June 13, Ms. Rooks filed a motion to compel treatment with Dr. Jones because Amazon did not comply with the previous order.

Amazon filed a response in opposition to the motion on June 23, the last day permitted by Court rules. Amazon switched course the next day and informed Ms. Rooks's counsel that it scheduled an appointment with Dr. Jones.

The treating physician, Dr. Thomas, made the direct referral recommendation five times previously, all in 2024. On July 3 and August 8, he referred her to Dr. Jones, and on August 5, 19, and 21, he referred her to an orthopedic specialist.

**Findings of Fact and Conclusions of Law**

Ms. Rooks must show she is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(c)(6) (2024); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

*Injury arising out of employment*

As a threshold issue, Amazon argued that Ms. Rooks has not suffered an injury arising primarily out of employment, based on Dr. Hazlewood's report.

Dr. Hazlewood's findings at this stage are of little value to the Court for a several reasons. First, neither party filed the records that the doctor reviewed to form his opinions, so the Court cannot compare his conclusions to what the records document. Second, Dr. Hazlewood wrote, "[T]his case is very murky and gray[,]" suggesting his own lack of confidence in his opinion. Third, some of his conclusions are based essentially on an assessment of Ms. Rooks's credibility, which is this Court's role. On the other hand, Dr. Thomas completed Amazon's forms by checking "work-related" and made unambiguous referrals. Amazon's causation challenge is unpersuasive, and the Court holds that Ms. Rooks will likely prevail at trial in showing that her injury arose primarily out of and in the course and scope of employment.

*Temporary disability benefits*

Turning now to temporary partial disability benefits, this refers to the time during which the injured employee can resume some gainful employment but has not reached maximum recovery. *Mace v. Express Servs., Inc.,* 2015 TN Wrk. Comp. App. Bd. LEXIS 49, at *8 (Dec. 11, 2015). However, even though an employee has a work-related injury for which temporary benefits are payable, an employer may still enforce workplace rules. *Id.* Further, "[a]n employer will not be penalized for enforcing a policy if the court determines (1) that the actions allegedly precipitating the employee's dismissal qualified as misconduct under established or ordinary workplace rules and/or expectations; and (2) that those actions were, as a factual matter, the true motivation for the dismissal." *Id.* at *9.

Here, the conditions of the light-duty work that Amazon offered Ms. Rooks were not conducive to her accomplishing much work. Her unrebutted testimony was that she was locked out of the computer system for approximately one month, and no one was able to help her access it during that time. So, she had nothing to do, given that her task was "typing on the computer." Ms. Rooks worked lengthy, 10.5-hour overnight shifts, sitting for virtually the entire time, and while taking narcotic pain medication. The Court understands why she fell asleep and respects her honesty in admitting this.

Regardless, being awake on the job was an established workplace rule and is a valid, ordinary workplace expectation. While Ms. Rooks testified to some conflict with human resources staff about her prescription boot and denial of ice for her injury, those circumstances do not persuade the Court that Amazon terminated her for any reason other than her sleeping on the job. Therefore, the Court holds Ms. Rooks is not likely to prevail at a hearing on the merits that she is entitled to temporary partial disability.

*Penalty referral*

The Court will not restate the many reasons it offered for penalties in the previous order.

Rather, the Court simply reminds that Dr. Thomas's wishes have been clear since July 3, 2024. The statute uses unambiguous, mandatory language: "When necessary, the treating physician . . . shall make referrals to a specialist[.] . . . The employer *shall be deemed to have accepted the referral,"* unless the employer offers a panel of specialists within three business days. § 50-6-204(a)(3)(A)(ii) (Emphasis added). Further, "In all cases where the treating physician has referred the employee to a specialist physician . . . the specialist physician . . . *shall* become the treating physician[.]" § 50-6-204(a)(3)(E) (Emphasis added). Amazon disregarded this statutory requirement.

In March 2025, this Court ordered that the referral must be honored before an employer's examination could occur, and the Appeals Board affirmed on May 20. Amazon finally relented and authorized the appointment. This was 35 days later, and one day after filing a pleading that still opposed the referral. At trial, while announcing the appointment, Amazon continued to argue that its previous opposition to the referral was lawful.

The delay—over a year as counsel admitted—has impeded the progress of this case and more importantly, Ms. Rooks's healing. It is highly concerning.

Therefore, another referral to the Compliance Program is warranted. Section 50-6-118(a)(8) calls for a penalty for "[f]ailure of any employer to timely provide medical treatment made reasonably necessary by the accident and recommended by the authorized treating physician[.]" The Court finds that Amazon violated this statute.

4

Regarding attorney's fees, Ms. Rooks's motion to compel treatment, which the Court need not rule on, does not request fees. Likewise, the dispute certification notice does not list fees for an unreasonable failure to provide treatment as an issue. However, as of July 1, 2025, section 50-6-239(b) reads, "The presiding workers' compensation judge may, at the judge's discretion grant permission for parties to present issues that have not been certified by a workers' compensation mediator."

Section 50-6-226(d)(1)(B) states that a court may award attorney's fees when an employer "*[u]nreasonably* denies a claim or *unreasonably* fails to timely initiate any of the benefits to which the employee . . . is entitled under this chapter[.]" (Emphasis added). The Appeals Board has not offered recent guidance on the definition of "unreasonable" in this context. *McCool v. Prof. Care Servs., LLC*, 2025 TN Wrk. Comp. App. Bd. LEXIS 22, at *5 (July 10, 2025). Dictionaries define "unreasonable" as follows: "Not guided by reason; irrational or capricious," *Black's Law Dictionary* 1537 (7th ed. 1999); "Not governed by or acting according to reason; not conformable to reason: absurd; exceeding the bounds of reason or moderation," *Merriam-Webster Dictionary,* https://www.merriam-webster.com/dictionary/unreasonable (last visited July 16, 2025).

In *Thompson v. Comcast Corp.,* the Appeals Board held that "absent highly unusual circumstances, a case should be permitted to largely run its course, unencumbered by uncertainties over future developments and the twists and turns inherent in litigation, before an award of attorney's fees and costs is made." 2018 TN Wrk. Comp. App. Bd. LEXIS 1, at *37 (Jan. 30, 2018). However, in *Thompson,* the Board also affirmed a fee award under somewhat similar circumstances: the employer refused to offer a panel of specialists over several months' time, and that fact would not change—nor would the fact change that the employee's attorney had to undertake significant work to secure the requested relief. *Id.* at *32.

The Court holds that Amazon unreasonably and capriciously failed to timely initiate medical benefits under section 50-6-226(d)(1)(B).

Therefore, it is ORDERED as follows:

1. Amazon shall authorize reasonable, necessary, and work-related treatment with orthopedic specialist Dr. Christopher Jones.

2. Ms. Rooks's request for temporary partial disability benefits is denied at this time.

3. This case is referred to the Compliance Program for consideration of a penalty.

4. The Court sets a status hearing on **October 27 at 10:30 a.m. Central Time.** You must dial 615-532-9552 or 866-943-0025 to participate.

5. Unless an interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit confirmation within seven business days may result in a penalty assessment for non-compliance. For questions regarding compliance, contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED July 17, 2025.**


*Kenneth M. Switzer*
_____
**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**<u>Appendix</u>**

<u>Exhibits</u>
1. Rule 72 Declaration of Sabrina Rooks
2. Dr. Thomas, Healthcare Provider Request for Information Forms[1]
3. Dr. Hazlewood Record Review Report
4. Panel
5. Wage statement
6. Disciplinary write-ups
7. Disciplinary write-up

---

[1] Amazon objected to the admissibility of these documents as hearsay. Tennessee Compilation Rules and Regulations 0800-02-21-.15(2) (2023) states, "Letters *or written statements* addressing medical causation . . . signed by a physician are admissible at an expedited hearing[.]" (Emphasis added). Amazon's forms qualify as "other written statements" and address medical causation, so the objection is overruled.

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on July 17, 2025.

| Name | Certified Mail | Regular mail | Email | Sent to |
|------|------|------|------|------|
| David Weatherman, employee's attorney | | | **X** | david@theweathermanfirm.com |
| Kristen Stevenson, employer's attorney | | | **X** | kcstevenson@mijs.com kpkudialis@mijs.com |
| Compliance Program | | | **X** | WCCompliance.Program@tn.gov |

_____
Penny Shrum
Clerk, Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➤ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➤ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
    When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*